CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
AUG 16 2011
JULIA C. DUDLEY, CLERK
BY: /s/ Tan Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES G. HAMILTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 6:10cv00033 |
| v. | ) |
| | ) By: Hon. Michael F. Urbanski |
| MICHAEL J. ASTRUE, | ) United States District Judge |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff James G. Hamilton ("Hamilton") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). Hamilton argues on appeal that the Administrative Law Judge ("ALJ") erred by failing to give controlling weight to the opinion of his treating physician, Dr. Thomas Peck, failing to properly evaluate his complaints of pain, and providing an insufficient residual functional capacity assessment ("RFC") to the vocational expert ("VE") which did not encompass all of Hamilton's limitations. Hamilton also argues that he submitted new and material evidence to the Appeals Council which warrants a remand. Having reviewed the administrative record and considered the arguments of counsel, the court concludes that the case must be remanded for further administrative proceedings as the ALJ's decision is not supported by substantial evidence. Remand is appropriate in this case under sentence four of 42 U.S.C. § 405(g) for consideration of Dr. Thomas Peck's letter, dated March 8, 2010, which was written after the ALJ's decision, but incorporated into the record by the Appeals Council. On remand, the Commissioner is further directed to obtain a physical consultative examination ("CE") which contains a functional capacity component. Accordingly, the Commissioner's

Motion for Summary Judgment (Dkt. # 15) is DENIED, and Hamilton's Motion for Summary Judgment (Dkt. # 9) is GRANTED and the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a
2

Case 6:10-cv-00033-MFU-RSB   Document 23   Filed 08/16/11   Page 2 of 14   Pageid#: 511

preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

3

## II

Hamilton was born in 1963 and has a high school education. (Administrative Record, hereinafter "R" at 28.) He lives with his wife and children, ages 13, 10 and 6 (R. 35.) He previously worked as a creeler, assembler and bread delivery truck driver. (R. 29-31.) Hamilton worked consistently from 1979 until 2007 when he stopped working due to back pain. (R. 181-82, Dkt. 10, p. 19.) Hamilton filed an application for benefits on April 26, 2007, claiming disability as of March 27, 2007. (R. 158.) The Commissioner denied his application for benefits on July 11, 2007 based on a medical records review by Dr. Robert McGuffin and this decision was confirmed on reconsideration on November 16, 2007 based on a medical records review by Dr. Joseph Duckwall. (R. 60, 68.) An administrative hearing was held on August 18, 2009 before an ALJ (R. 24-49.)

In a decision issued August 28, 2009, the ALJ found that Hamilton had severe impairments consisting of herniated disc of the cervical spine, status post anterior cervical discectomy and fusion, obesity and obstructive sleep apnea. (R. 15.) Considering these impairments, the ALJ found that Hamilton retained the RFC to perform light work, except that due to his impairments he must only occasionally balance, kneel, crawl, crouch, stoop, reach or climb ramps/stairs, and must never work around hazardous machinery, at unprotected heights or on vibrating surfaces, ladders, ropes or scaffolds. (R. 19.) Based on this RFC, the ALJ determined that Hamilton cannot perform his past relevant work as an assembler, route salesman of baked goods or creeler. (R. 22.) However, the ALJ further determined that a significant number of jobs exist in the national and regional economies which Hamilton can perform. (R. 22.) Accordingly, the ALJ concluded that Hamilton is not disabled under the Act. (R. 23.) The Appeals Council denied Hamilton's request for review and this appeal followed. (R. 1-3.)

Hamilton and the Commissioner have filed respective motions for summary judgment and the court heard oral argument on May 16, 2011.

### III

Hamilton argues on appeal that the ALJ failed to give appropriate weight to the opinion of his treating physician, Dr. Thomas Peck, as well as his examining neurosurgeon, Dr. John Jane, Sr. Hamilton further argues that the ALJ erred by improperly discounting his complaints of pain and providing an insufficient RFC to the VE, which did not encompass all of Hamilton's limitations. Finally, Hamilton states that evidence of an MRI he submitted to the Appeals Council constitutes new and material evidence and merits remand. Because the court finds that substantial evidence does not support the ALJ's rejection of Dr. Peck's opinion and remands this case for a physical CE, as well as for the Commissioner to consider Dr. Peck's March 8, 2010 letter, it need not specifically address Hamilton's arguments regarding credibility, the RFC posed to the VE or the MRI.

On March 28, 2007 Hamilton went to the emergency room complaining of increasing numbness and tingling in his extremities. (R. 255.) An MRI of his cervical spine, taken that day, showed disc degeneration and bulging at C4-5, C5-6, C6-7 levels, as well as a central disc herniation at C5-6 impinging on the spinal cord. (R. 261.) On April 4, 2007, Dr. John Fraser, Hamilton's treating neurosurgeon, performed an anterior cervical discectomy and fusion of C4-5 and C5-6. (R. 266.) Following surgery and several days of inpatient physical therapy, Hamilton's diagnosis on discharge was cervical disc herniation with diffuse cervical myelopathy, status post anterior cervical discectomy and fusion of C4-5 and C5-6. (R. 267.)

Dr. Fraser's examination on June 25, 2007 showed hyperreflexic gait, poor balance and difficulty with toe-walking. (R. 294.) Hamilton also complained of left leg weakness and hypersensitivity to touch and temperature in his legs. (R. 294.) On August 10, 2007, 4 months

5

post-operation, Dr. Fraser noted Hamilton's "x-ray looks satisfactory" and stated his gait was slightly broad but he could walk on his heels and toes. (R. 292.) Dr. Fraser wrote "[o]n the one hand, I cannot say that there is no work that he could do but I clearly cannot release him to work around heavy machinery and such like with his spastic gait because of the risk of injury." (R. 292.)

Dr. Peck, a treating physician certified in family medicine, saw Hamilton on April 16, 2007, following his spinal surgery. (R. 280). Dr. Peck's evaluation of Hamilton's lower extremities revealed a wide based gait and anesthesia. (R. 280.) In September 2008, Dr. Peck referred Hamilton to Dr. John Jane, a neurosurgeon at the University of Virginia Health System. (R. 306, 310.) On September 3, 2008, Dr. Jane wrote Dr. Peck a letter stating "on examination [Hamilton] is severely myelopathic with hyperactive reflexes and upgoing toes…I don't think there is anything further that could be done and I am afraid I would consider him to be permanently disabled." (R. 306.) On December 3, 2009, Dr. Jane completed a Spinal Impairment Questionnaire diagnosing cervical spondylosis with myelopathy secondary to spinal cord atrophy status post cervical fusion. (R. 406.) In support of this diagnosis, Dr. Jane referenced an MRI showing "adequate decompression and fusion but persistent cord signal changes consistent with atrophy and adjacent level disease." (R. 408.)[2] Dr. Jane indicated that clinical findings were "not evaluated." (R. 406.)

On February 9, 2009, Dr. Peck wrote that Hamilton "continues to be pretty much consumed by his disability." (R. 329.) Hamilton reported he had little mobility and difficulty voiding and that two neurosurgeons had told him he was disabled. (R. 329.) On March 9, 2009, Dr. Peck filled out a Medical Evaluation, opining that Hamilton was unable to participate in

---

[2] The MRI referenced in support of his diagnosis is not identified by date or included in the administrative record.

Case 6:10-cv-00033-MFU-RSB    Document 23    Filed 08/16/11    Page 6 of 14    Pageid#: 515

employment and training activities in any capacity at this time and that he recommended Hamilton apply for disability. (R. 309.) On May 28, 2009, Dr. Peck filled out a Multiple Impairment Questionnaire and stated that the clinical finding supporting his diagnosis of C4-5 and C5-6 myelopathy and chronic neck pain included hyperactive reflexes, Babinski and unsteady gait. (R. 317.) Dr. Peck opined that Hamilton was not a malingerer, had not had significant improvement since his April 2007 surgery and was not employable. (R. 322-23.) Dr. Peck also completed a letter dated May 29, 2009, detailing Hamilton's disability. (R. 326-27.) He wrote, "[Hamilton] continues to have significant neurological deficit…the basis of his diagnosis is his pre-surgical MRI, surgical consultation from Dr. Fraser, operating surgeon, and Dr. John, second opinion surgeon." (R. 326.) Dr. Peck continued, "[Hamilton's] limitations…are considerable" noting marked decreased strength, endurance, coordination and balance, as well as resulting impaired ambulation. (R. 326.) He also noted that Hamilton had not requested pain medication, stating "[Hamilton] feels that resting when in pain is more efficacious than medicine." (R. 326.) Dr. Peck opined "James Hamilton is not employable in a full-time capacity." (R. 327.)

Dr. Peck saw Hamilton again in September 2009 and he indicated that Hamilton requested pain medication because he was denied disability and "was told that since he is not on pain medicine, he must not have severe pain…." (R. 394.) Dr. Peck wrote that Hamilton "claims that he chooses to use his pain as a judgment for his level of activity…and thinks it is wise to rest when he has too much pain." (R. 394.) On March 8, 2010, Dr. Peck wrote another letter detailing Hamilton's condition, which plaintiff provided to the Appeals Council. (R. 402-04.) In support of his conclusion that Hamilton is not capable of gainful employment, Dr. Peck notes the following clinical findings:

7

> Clinical findings include hyperactive reflexes, positive Babinski sign, and unsteady gait. Mr. Hamilton has markedly decreased strength, endurance, coordination and balance, with impaired ambulation; muscle weakness and quivering; loss of sensation while walking; decreased sensation in the upper extremities; and increased neuropathic symptoms with supination of both hands....He has marked limitations in the use of his neck....

(R. 403.) Regarding Hamilton's functional limitations, Dr. Peck opined he could sit and stand/walk less than one hour each in an eight hour workday, would need to take continuous unscheduled breaks throughout the day and would be absent more than three times per month as a result of his impairments. (R. 404.) Dr. Peck further stated that Hamilton could never lift from the floor level, could carry up to ten pounds only occasionally and had multiple significant or marked limitations in the use of his hands and arms. (R. 404.) Dr. Peck emphasized that Hamilton faced financial difficulties obtaining certain objective studies and medications and reiterated that he did "not believe Hamilton is capable of performing any full-time, competitive work...." (R. 404.)

Hamilton argues that the Commissioner failed to give appropriate weight to the opinion of his treating physician, Dr. Peck, as well as his examining neurosurgeon, Dr. Jane. A treating physician's opinion is to be given controlling weight by the ALJ if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d at 178; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations...."); Social Security Ruling ("SSR") 96-2p.

8

The ALJ's rejection of the opinion of Hamilton's treating physicians falls short of what is required by case law and the Commissioner's own regulations. In determining the weight to give to a medical source's opinion, the ALJ must consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d), 416.927(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

The ALJ rejected the opinions of Drs. Peck and Jane that Hamilton is unable to work on the grounds that "these physicians included no objective testing in their reports and appear to base their opinions on the claimant's subjective complaints." (R. 21.) The ALJ stated that she gave great weight to the opinions of the state agency physicians[3] instead of relying on Hamilton's treating sources because they were consistent with the objective evidence, Dr. Fraser's statement "that claimant is not precluded from all work" and Hamilton's conservative treatment with over-the-counter pain medication. (R. 21.) In support of her decision to discount the opinions of Drs. Peck and Jane, the ALJ wrote that she:

> [G]ives no weight to the opinion of Peck or Jane as these physicians included no objective testing in their reports and appear to base their opinions on the claimant's subjective complaints. In addition, the claimant did bend in order to get into a car and drive

---

[3] Both Drs. McGuffin and Duckwall found that Hamilton could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday and sit 6 hours in an 8 hour workday. Further, Hamilton should never climb ramps or stairs, should avoid all workplace hazards and can only occasionally stoop or crouch. (R. 286-288, 300-02.)

9

> forty miles to his hearing and he appeared to sit comfortably for
> about one and a half hours throughout the hearing as well. (R. 21.)

Considering Hamilton's treatment history with Dr. Peck, as well as Dr. Jane's opinion that he is permanently disabled and there is nothing further that could be done for him, the ALJ's decision is not supported by substantial evidence.

Dr. Peck has been Hamilton's treating doctor since 2007. Based on his examination of Hamilton and his complaints of pain, Dr. Peck opined numerous times that Hamilton cannot work. This opinion is shared by Dr. Jane, an examining neurologist. While Dr. Peck's records may not themselves contain a great deal of objective findings, he referred Hamilton to Dr. Jane whose examination showed Hamilton was "severely myelopathic with hyperactive reflexes and upgoing toes." (R. 307.) Dr. Jane further stated that Hamilton's films showed cord signal change and adjacent level disease. (R. 307.) Significantly, Dr. Jane opined that there was "[nothing] further that could be done...." (R. 307.) Moreover, Dr. Peck has specifically stated that Hamilton faces financial difficulties which have prevented him from obtaining certain objective studies and medications, writing "[t]his is not indicative of a lack of severe symptoms, but simply of Mr. Hamilton's inability to afford certain tests and medications." (R. 404.)

As stated above, the ALJ gave great weight to the opinions of the state agency physicians, stating their opinions are consistent with the objective evidence, Dr. Fraser's opinion regarding Hamilton's ability to work and Hamilton's lack of prescription pain medication. However, Drs. Duckwall and McGuffin only reviewed the earlier medical records and did not examine Hamilton. Dr. McGuffin completed his RFC (physical) in July 2007, while Dr. Duckwall completed his RFC (physical) in November 2007. Moreover, while the ALJ states that Dr. Fraser's opinion is consistent with her decision that Hamilton is not disabled, in fact, Dr. Fraser's statement regarding Hamilton's ability to work is ambiguous. On September 3, 2008,

only four months following Hamilton's surgery, Dr. Fraser wrote, "...I cannot say that there is no work that he could do, but I clearly cannot release him to work around heavy machinery and such like with his spastic gait because of the risk of injury." (R. 292.) This is not a clear opinion that Hamilton can perform gainful employment and it provides no specifics regarding his functional limitations. Further, Dr. Fraser even mentioned disability as a possible outcome, writing "if retraining is not going to be available, I suspect he will end up on Disability...." (R. 292.) Hamilton also testified that he avoids taking pain medications because he feels that his pain is a signal that he should rest.[4] (R. 38.) He stated he feared causing additional damage if he takes pain medication.[5] (R. 38.)

Finally, the ALJ's emphasis on Hamilton's ability to drive to the hearing and "sit comfortably for about one and a half hours" is somewhat inapt. (R. 21.) As Hamilton points out, the transcript shows the hearing lasted only approximately 40 minutes. (R. 26-49.) Moreover, Hamilton testified he suffered serious pain while sitting at the hearing, stating "my whole left leg at this point is completely numb, like it's asleep, and the lower back on this side, is, is having sharp pains in it, and I'm having about an eight on a scale across my neck and shoulders now." (R. 37.)

The ALJ did not satisfy her obligation to provide the "persuasive contrary evidence needed to justify her rejection of Dr. Peck's disability opinion. The absence of "persuasive contrary evidence" in the ALJ's opinion suggests that Hamilton's record contained insufficient evidence to support a decision on his claim. According to the regulations, a consultative examination is obtained in order to resolve any conflicts or ambiguities within the record, as well

---

[4] Hamilton testified he takes several hour long naps every day. (R. 41.)

[5] Dr. Peck's notes stated repeatedly that Hamilton wants to avoid taking prescription medications for pain. (R. 321, 326, 394.)

11

as "to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. §§ 404.1519a(a)(2), 416.919a(a)(2) (2008). A consultative examination must be ordered "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." 20 C.F.R. §§ 404.1519(b), 416.919a(b) (2008). For this reason, the court will remand the case to the Commissioner to order a physical consultative examination ("CE") so that any conflicts or ambiguities in the medical evidence may be resolved.

The court will also remand this case under sentence four of 42 U.S.C. § 405(g) for the Commissioner's consideration of Dr. Peck's letter dated March 8, 2010.[6] This letter contains clinical and functional findings which the Commissioner should evaluate in a substantive manner. Because the letter was written after the ALJ's decision, but incorporated into the record by the Appeals Council, remand under sentence four of 42 U.S.C. § 405(g) is appropriate.

The Appeals Council must consider evidence submitted with a request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc). Evidence is considered to be "new" if it is not duplicative or cumulative. Id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. at 96 (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)). Where the Appeals Council considered the additional evidence submitted to it, but denied review, the Fourth Circuit requires the district court to "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Id. at 96.

---

[6] Hamilton does not specifically allege failure to order a physical CE or failure to consider Dr. Peck's March 8, 2010 as error. However, for the reasons outlined in this memorandum opinion, this Court finds that the case should be remanded for a physical CE which includes a functional component, as well as the ALJ's consideration of the March 8, 2010 letter.

12

Dr. Peck's March 8, 2010 letter meets the Wilkins test. It is new because it did not exist at the time of the ALJ's decision. It is material because it includes clinical findings supporting Hamilton's functional limitations and Dr. Peck's opinion that Hamilton cannot work. In her opinion, the ALJ specifically stated that she did not give any weight to the opinion of Dr. Peck because he included no objective testing in his reports. (R. 21.) Finally, the letter confirms that the limitations outlined existed at the time of the ALJ's decision, indicating that "there has been no significant improvement since [Hamilton's] surgery on April 4, 2007. (R. 404.)

By making this finding, the court does not suggest that this letter conclusively establishes disability. "The duty to resolve conflicts in the evidence rests with the ALJ, not with the reviewing court." Smith v. Chater, 99 F.3d at 638 (citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)). Rather, the court is charged with reviewing "the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins, 953 F.2d at 96. Given this record, the court cannot answer that question in the affirmative. Accordingly, the court will remand to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

## IV

Although the court concludes that the record does not provide substantial evidence to sustain the ALJ's conclusion that Hamilton is not disabled, the court is unable at the same time to recommend an outright award of benefits. The record is in need of further development with regards to Hamilton's impairments. Therefore, the court directs the Commissioner to obtain a physical CE which includes a functional component addressing whether Hamilton can work. The court further directs the Commissioner to consider Dr. Peck's March 8, 2010 letter, including a substantive review of the clinical and functional findings contained therein. That is not to say, however, that a finding of disability will result. Ultimately, the decision of the

13

Commissioner may well be apt, but that cannot be determined without both obtaining a physical CE and substantively reviewing the March 8, 2010 letter.

For these reasons the Commissioner's Motion for Summary Judgment (Dkt. # 15) is **DENIED**, and Hamilton's Motion for Summary Judgment (Dkt. # 9) is **GRANTED** and the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this opinion.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to counsel of record.

                Entered: August 16, 2011

                /s/ Michael F. Urbanski

                Michael F. Urbanski
                United States District Judge